UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JACQUELYN KENNEDY,

    Plaintiff,

v.

EDWARD D. JONES & CO., L.P., a
Missouri limited partnership qualified to do
business in the State of Florida, and CHERYL
BALABAN, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Jacquelyn Kennedy ("Kennedy"), through her undersigned attorneys, files this Complaint against the Defendants, Edward D. Jones & Co., L.P. and Cheryl Balaban (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

    (a)    Kennedy was employed in the Southern District of Florida by the Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because Defendant keeps an office for the transaction of its customary business in this district (Kennedy worked out of the Federal Highway location in Fort Lauderdale and Cheryl Balaban resides in Broward County). The corporate Defendant has its registered agent in Broward County.

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Kennedy resides within this judicial district.

6. Defendant Edward D. Jones & Co., L.P., is a Missouri limited partnership qualified to do business in the State of Florida corporation which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States.

7. The corporate Defendant paid employees and paid Kennedy and it has gross annual sales volume that greatly exceeds $500,000 annually, at least for years 2015-21. The corporate Defendant has two or more employees engaged in commerce, as it has two or more who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the one South Florida location at which Kennedy worked (and there at least 50 south Florida locations) Defendants have at least 2 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use cars and vehicles that in turn use gasoline, which vehicles and gasoline were manufactured outside the State of Florida, and the employees frequently communicate across state lines through communications with clients who

reside out of state on a daily basis. Further, the Defendants have a team of employees who work in other states and the various employees made long distance phone calls and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8. Kennedy is entitled to individual coverage, as she regularly and recurrently made calls to employees and other offices across state lines and thus she participated in the actual movements of goods or services and commerce across state lines, as numerous of Defendants' clients reside out of state permanently or at least for parts of the year and Kennedy communicated with them regularly which resulted in numerous phone calls per day that were out of state that resulted in the client changing investment choice or making additional investments in securities and alternative investments.

9. Individual Defendant Balaban is the owner/general manager of the corporate Defendant's location in Fort Lauderdale and operates it day-to-day and has operational control over that location deciding all financial decisions and having say over numerous employees and directing their work day-to-day, as the individual Defendant had the power the hire and fire, daily managed the company and its location and was ultimately responsible for the profitability of the location. Balaban knew that Kennedy was working overtime and continued to assign her work that required Kennedy to work overtime hours, but the corporate Defendant learned by remotely looking at Kennedy's computer that overtime was being worked and not being paid and ordered Balaban to stop allowing Kennedy to work overtime without proper pay, but Balaban did not pay heed to those admonitions and the corporate Defendant knew, but allowed it to continue to happen.

10. The corporate Defendant was an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

11. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, all corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Kennedy is an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act, and was an employee of the Defendants because the Department of Labor's regulation clearly sets forth that all three corporate entities found to be joint employers are jointly and severally liable under the FLSA, as follows:

> [i]f the facts establish that the employee is employed jointly by two or more employers, *i.e.*, that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purpose of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act, including overtime provisions . . . .

29 C.F.R. § 791.2(a) (2002).

14. Kennedy was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Kennedy performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

**STATEMENT OF FACTS**

15. Within the past three (3) years (October 2019 to February 2022), Kennedy worked for the Defendants as a Branch Office Administrator which had her performing whatever tasks Defendants assigned her, which were typically to communicate with clients to set up appointments and phone calls with Balaban and sometimes let Balaban know about investment questions they had.

16. Kennedy's duties included doing whatever task the Defendants instructed her to perform, which varied depending upon the position at the time but all positions involved her communicating with members of management as to how they wanted to handle certain situations.

17. Kennedy did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Kennedy was only given tasks that were designed to facilitate production work (getting clients and potential clients to speak to Balaban about investment choices to get money under management) of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve her exercising independent judgment and discretion on matters of significance.

19. Kennedy's primary duties were not management.

20. Kennedy did not have any authority to interview, select, and/or train employees. Kennedy did not have any authority to set and adjust the rates of pay and hours of work for any employees. Kennedy had no authority to direct the work of employees. Kennedy did not maintain production or sales records at all when she worked for the Defendant, nor did she use any such records to supervise or control any employee. In fact, Kennedy does not even know anything about the business's financing or financial success or failure. It was not her responsibility. Kennedy knows nothing about the sales numbers or figures, as that was not her responsibility, but rather the responsibility of someone else in higher management. Kennedy did not supervise any

staff. Kennedy had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Kennedy had no say concerning what any particular employee would be paid, how many employee could work in the office location, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants. Kennedy had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills. Kennedy never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

      21.    While Kennedy worked for the Defendants, she never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Kennedy worked for the Defendants, she never handled employee complaints and grievances, as that was for the Defendants to do. Also, Kennedy never disciplined employees, nor did she have the power or authority to do that. Kennedy did not plan any work for any employee, as there was no work to plan. Kennedy never determined any techniques to be used by employees to do their job, as she could not tell a laborer how to fix anything. Kennedy never apportioned work among any employees, as there were no employees who reported to her to whom to apportion work. Kennedy never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. Kennedy had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Kennedy had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Kennedy had no involvement with respect to budgeting. Kennedy was not involved in reviewing any sort of financial documents or statements of the buildings, and she did not review any such documents, nor was Kennedy supposed to. Kennedy had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Kennedy had anything to do with in terms of deciding how they would be handled or dealt with while she

worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires. Kennedy simply followed the well-established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

22. Kennedy did not do anything that could have resulted in financial losses for the Defendants. Kennedy did not perform work that was directly related to management or general business operations of Defendants or their customers, because Kennedy did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (data process clients investment choices and keeping in touch the clients to assistant in having them meet with Balaban and other manual tasks). Kennedy also did not perform work directly related to the management or general business operations of the Defendants because Kennedy did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Rather, Kennedy was one more person looking to perform production work the Defendants rely on so heavily (get money under management) assist with the production work of assisting getting money under management and the pipeline of clients' appointments lined up so investment choices could be changed which winds up in churning of accounts so the Defendants could make money.

23. In the course of employment with Defendant, Kennedy worked the number of hours required of her, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Kennedy regularly worked in excess of forty (40) hours per workweek.

25. The Defendant is not going to have accurate records of hours worked, because it required hours worked off of the clock and/or kept no records of the hours worked by Kennedy. Kennedy received paychecks stating that the pay was to compensate her for her first 40 hours worked, with no compensation for any of the overtime hours worked, even though Defendant Balaban knew about it and the corporate Defendant's home office knew about through monitoring of Kennedy's computer.

26. Kennedy has retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay them a reasonable fee for their services.

27. Kennedy is entitled to their reasonable attorneys' fees for prosecuting this action, whether or not they are the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28. Kennedy re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Kennedy is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.  Before Balaban Kennedy worked for Paul Kavanaugh in Coral Springs, and worked significant overtime, which the corporate Defendant knew, but for which she was not paid.  Neither at Kavanaugh's office nor at Balaban's office was there any DOL poster up that would have advised Kennedy of her rights to overtime and other rights under the Fair Labor Standards Act, and thus Kennedy requests that the statute of limitations in this case be extended or tolled going back to when she started for the corporate Defendant in 2014.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Kennedy has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31.     As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Kennedy is entitled to liquidated damages as provided in § 216 of the FLSA, and are entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within and going back to 2014 when she started with the corporate Defendant, Kennedy demands judgment against Defendants for the wages and overtime payments due her for the hours worked by her for which she has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: October 5, 2022

                      Respectfully submitted,

                      By: /s/*Chris Kleppin*
                         Chris Kleppin
                         Fla. Bar No. 625485
                         chris@kleppinlaw.com
                         The Kleppin Firm, P.A.
                         *Attorneys for Plaintiff*
                         8751 W. Broward Blvd.
                         Suite 105
                         Plantation, FL 33324
                         Tel. (954) 424-1933
                         Fax (954) 474-7405
          Secondary E-Mails:     assistant@kleppinlaw.com